The second case on our docket this morning is 23-50582. Is it Ambriz v. Hegar? I'm not sure how to pronounce it. May it please the court. My name is Roger Mandel, and I represent the plaintiff-appellant Rolando Ambriz. I'll be reserving five minutes for rebuttal. This is a case about protecting private property rights from governmental overreach, even when the government claims to act in the best interest of the property owner. To legally justify his position, the comptroller claims he is only taking custody of property which its owners have abandoned. But the Texas Unclaimed Property Act, or TUPA, does not even purport to declare the property abandoned. In the circumstances under which the comptroller takes custody of property, do not come close to satisfying the requirements for abandonment under Texas common law, historical practices, and Supreme Court precedent. Because Mr. Ambriz did not abandon his property and the state made public use of it, the comptroller must pay Mr. Ambriz just compensation when he returns Mr. Ambriz's property. With that overview in mind, I'll make three arguments today. First, the district court erred by holding that Mr. Ambriz failed to sufficiently plead his Fifth Amendment takings claim. Specifically, the district court erred by holding that Mr. Ambriz had abandoned his property such that he no longer had any interest in it subject to a taking. Second, the district court correctly held that Mr. Ambriz suffered injury in fact, and that his claim is ripe. And third, the district court correctly held that the Eleventh Amendment does not bar Mr. Ambriz's purely prospective declaratory and injunctive claims pursuant to the Ex Parte Young Doctrine. I now turn to my first argument that Mr. Ambriz sufficiently pleaded his takings claim. In Webb's famous pharmacy in 1980, the Supreme Court reiterated the long established rule that the government must pay just compensation whenever it makes a physical taking, even a temporary one. They called it a categorical duty. To avoid this rule, the comptroller relies on the exception for abandoned property set forth in the Supreme Court's decision in Texaco, Inc. v. Short in 1982. However, as the facts of Texaco make clear, and as the Supreme Court recently explained in 2023 in Tyler v. Hennepin County, that exception applies under a very narrow, very strict set of criteria, criteria which TUPA does not even begin to satisfy. Initially, the statute must declare the property abandoned and extinguish all the property owner's rights, as the Indiana mineral rights statute did in Texaco. The Supreme Court's decision in Anderson National Bank v. Luckett in 1944, which involved bank accounts that were, quote unquote, presumed abandoned and transferred to the state of Kentucky, I believe is dispositive. The court wrote, and I quote, prior to a judicial decree of abandonment, the depositors will not be deprived of their property by the surrender of their bank accounts to the state. TUPA likewise merely describes the property as, quote unquote, presumed abandoned, and it does not purport to declare abandoned and extinguish the property owner's rights. Since TUPA did not deprive Mr. Ambrose of ownership of his property, it necessarily follows that the comptroller must pay him just compensation for its use. Next, in addition to declaring the property abandoned, the statute must transfer ownership of it that is exceded to the state. Otherwise, as Anderson National Bank makes clear, the statute is a mere custodial statute affecting at least a temporary physical taking for which just compensation must be paid. And since TUPA did not escheat Mr. Ambrose's property to the state, the comptroller must pay him just compensation for its public use. Notably, Chapter 71 of the Texas Property Code does provide for escheatment of property when an individual dies intestate and without heirs. It declares it abandoned. So this shows the legislature well understood the difference between escheat, which vests title in the state, and the mere taking of custody under TUPA. However, even if TUPA purported to declare property abandoned and escheat at this state, it would still violate the takings clause for two reasons. First, as the Supreme Court established way back in 1944 in Anderson National Bank versus Luckett, to have escheat, you have to provide due process,  TUPA has no such due process elements. Second, per Tyler, a declaration of abandon by statute must comport with, and it says, state law, traditional property law principles, historical practices, and Supreme Court precedent. Otherwise, the government could just take whatever property it wants without paying for it, simply by passing an escheat statute to do it. But those criteria collectively require a voluntary surrender or relinquishment or disclaimer of all rights in the property, and this must be per Tyler for a lengthy time. And Tyler makes clear that three years is not a lengthy time. Here, mere inactivity involving a savings account and non-communication with the bank about it for three years does not show a voluntary surrender or relinquishment or disclaimer of rights in the property. And under Tyler, three years is simply not long enough of a time. TUPA is even further away from meeting the Texas common law standard for abandonment of personal property. Texas law requires not only a voluntary relinquishment of all rights, but also a specific intent to abandon. That is an intent to leave the property free to be taken by somebody, anybody else. An example might be putting something in the trash and putting it out in front of your house. TUPA does not require such intent, nor can such intent be inferred from the circumstances under which TUPA allows transfer of property. So even if TUPA was an escheat statute, it would still be unconstitutional. Now turn to my second point that Mr. Ambrose had standing. Regarding injury in fact, as the Supreme Court held in Nick in 2019, Mr. Ambrose suffered injury in fact as soon as the comptroller took his custody, into custody, his property into custody, and made public use of it without paying just compensation. And the Supreme Court held in Citizens for a Better Environment back in 77, that continuing present adverse effects, that is continuing injury, in addition to past exposure to illegal conduct, establishes standing to pursue prospective relief. Here, Mr. Ambrose is suffering continuing injury from the ongoing loss of the time value of his property. And this court's decision in James v. Hager in 2023 doesn't dictate a different conclusion. There, the court focused primarily on claims that the comptroller was taking property into custody without proper notice, not on a takings claim. Not surprisingly, therefore, the opinion does not indicate that this court considered the ongoing loss of the time value of the plaintiff's property as a possible continuing harm. To the contrary, the court's reliance on the Arnett line of cases strongly indicates that it did not. In Arnett, the plaintiff had already received back his original property. When he received back his original property, the loss of the time value of his property stopped, so there was no ongoing harm. In contrast, Mr. Ambrose has not received his property back, and he continues to suffer the loss of the time value of his property. Let's turn to ripeness now. Even though Mr. Ambrose has already suffered injury, the comptroller argues that Mr. Ambrose's claim is not ripe, because he hasn't yet made a claim. And when he does, the comptroller might turn down his claim entirely for some unknown reason. But that constitutes an administrative exhaustion requirement. And in Pactel in 2021, the Supreme Court held, and I quote, administrative exhaustion of state remedies is not a prerequisite for a takings claim when the government has reached a conclusive position, end quote. Rather, the court said there's only a modest finality requirement. Here, the comptroller has taken a final conclusive position, as the comptroller admits he will not pay just compensation, because the statute, TUPA, prohibits him from doing so. I would note that in our brief at pages 17 to 20, we noted that four out of five cases which have addressed a situation where claims have not yet been made for return of the property held that there was standing, injury in fact, and ripeness. And the comptroller simply didn't respond to any of those cases in his brief. Let me now turn to my third argument, that the 11th Amendment does not bar Mr. claims pursuant to the ex parte Young Doctrine. In Verizon in 2020, the Supreme Court stated the doctrine applies pursuant to what it called a straightforward inquiry when two things are true. Number one, that the complaint alleges an ongoing violation of federal law, and number two, that it seeks relief properly characterized as prospective. In its en banc decision in Green Valley in 2020, this court held that, quote, as long as the claim seeks perspective or relief for ongoing harm, the fact that a current violation can be traced to a past action, does not bar relief under Young, close quote. Here, Mr. Ambrose is suffering an ongoing violation of the takings clause from the state's ongoing use of his property for public purposes, and its ongoing refusal to pay him just compensation for that use. I submitted last week a supplemental notice of supplemental authority, and the District Court of Maryland in Franceau, in January of this year, held exactly that, that their ongoing refusal to pay and the ongoing use of the property equals an ongoing violation. So what's the remedy? The remedy we're asking for, number one, is a declaration that the part of TUPA that prohibits the payment of just compensation is unconstitutional. And then number two, it is to require the comptroller to comply with the takings clause, with the Fifth Amendment in the future, and to pay just compensation on future claims. We're not asking for him to go back to claims that have been paid in the past without just compensation, only that he pay just compensation on future claims, which is why it's prospective relief under- As long as the state changes its policy and starts immediately refunding or transferring the money back to the owners, there won't be damages in the future. As claims are made in the future, we're asking that he be required to pay just compensation. And we believe that is prospective relief under Edelman versus Jordan, decided by the Supreme Court just a few years ago. Actually, in 1974, I'm sorry. In that case, the state of Illinois was violating federal regulations by paying benefits too slowly. And there was two things they asked for, three things. Number one was an injunction that this was in violation of federal law. And nobody disputed in that case that that was purely prospective. Second, they said on future claims, you have to pay the benefits. In accordance with the federal regulations. And that's equivalent to us asking the comptroller to pay on future claims just compensation. What the Supreme Court in Edelman said was not prospective was what was called equitable restitution, which was to go back to people who had already made claims in the past, had those paid, albeit underpaid, and give them the money that they had not been paid in the past. But we're not asking for that in this case. In fact, Mr. Ambrose has not yet made his claim, so he can't be asking for the court to go back and get more money on a claim that was already- If you win on your declaratory injunctive relief, he goes into court tomorrow. Does he get interest tomorrow? Well, the next step for him would be actually to go and make his claim with- Make his claim. Make his claim with- Does he get interest on it tomorrow? I mean, if he claims, in the state says, you get it back, take it back, you get interest. Yes, he would get the time value of his- For how long? The time value between today and tomorrow, or the time value going all the way back? Well, I think that is a question as to the proper measure of relief, which is not actually in front of the court, but I would say that the classic measure is from the date that the property was taken until the date of payment. I'm just trying to see how you're going to do your class, actually. Right, it would be from the date, that would be that. But if the court was concerned about this issue of whether that part, the part between the date of taking and the date of the decree, if the court was concerned that that might violate, not be prospective under Edelman, then it could limit the decree to from the time of the court's decree going forward. But we believe if you compare apples to apples with Edelman, that the question is, is it a future claim or a past claim, is the difference between retrospective and prospective relief. And therefore, the court could order that the comptroller on future claims pay just compensation, even just compensation that dates back to the property being taken prior to the court's decree. But again, this is part of the discretion that the district court is going to have in shaping the relief. But the most important point, I think, is what this court said in Green Valley, which was as long as there's any part of the claim that is prospective, then the 11th Amendment doesn't bar the suit. And clearly, if nothing- It might bar damages for the past conduct, is what I'm asking you about. Well, Your Honor, I would say first, the declaration of non-unconstitutionality, clearly prospective under Edelman. But second, I believe that the declaration you have to pay on future claims, even if the time period dates back to before the decree, is within the scope of what Edelman declared prospective relief. And I see my time is up, unless you have any more further questions at this time. Chief Counsel, one quick question. Counsel, before you sit, can you, your friend on the other side points to two cases from our court, McMurtry and Baypoint, that seem to say you can't bring a takings claim against a state in federal court. So I'm curious what you do with either of those two cases. Are they just wrong? Are they inconsistent with Edelman? Do we need to overrule them? Are we bound by them? Does it not apply because this is an injunction case? I'm curious, what is your response? Well, I think the 11th Amendment, in general, says that you cannot sue the state or, in this case, an official acting in their official capacity in state. But Ex parte Young is the exception when you're suing for prospective relief to prohibit ongoing violation of the Constitution. And I don't think Baypoint or the other case you referenced says that Ex parte Young does not constitute a valid exception to the general rule of the 11th Amendment. So not to put words in your mouth, but just to make, are you saying that the difference is the demand for money damages in those two cases and the demand for an injunction in this case? Yes, your honor. Thank you, Chief Judge Richman, and may it please the court, Kyle Heifel for the comptroller. The most straightforward way for the court to resolve this case is to hold that sovereign immunity bars Ambrose's claim. So I'd like to start there. Ambrose argues that he can get around the state's sovereign immunity in two ways, Ex parte Young and Penn East. And in particular, during argument, my friend on the other side focused on Ex parte Young, so I'll start there. Ambrose argues that he can use Ex parte Young because he seeks prospective relief. But at the same time, on pages 17 and 50 of his opening brief, he argues that the alleged taking already occurred in the past. So to try to square those two things, Ambrose argues that there's an ongoing violation, an ongoing injury until the comptroller pays him just compensation. But this court already rejected that argument in James and Arnett. There, the court explained that once a taking has occurred, a plaintiff can't get prospective relief just because he hasn't yet received just compensation. And in fact, the plaintiffs in James were in a very similar situation to Ambrose, in that they had not yet filed claims for the property. But this court nevertheless held that to get prospective relief, a plaintiff must plausibly allege a future taking, which the plaintiffs in James had not done, and which Ambrose hasn't done for the same reasons. Now, Ambrose tries to distinguish James and Arnett, and for that matter, all the case law saying that sovereign immunity bars takings claims, by saying that he's also seeking interest. And it's important to understand the role that interest plays in the takings context. Interest isn't a matter of when the taking occurred or when the injury happens. It's just a matter of calculating the appropriate amount of just compensation. So there are situations where the payment of just compensation requires the payment of interest that has accrued between the time of the taking and the time that just compensation is being calculated. But that just highlights the gap in time and the fact that the taking is already. If we were to declare today that the statute results in an unconstitutional taking because it doesn't sheet. Ownership still stays with the person with whom the account belongs to. And the fact that it doesn't pay interest is a taking without just compensation. We just make that declaration. How does that go against the 11th Amendment? Why is it that with the next partition? Because it's another form of repackaging a claim for monetary relief as a request for an injunction. So what Ambrose is- We're not saying that the state has to pay any interest. We're just saying it can't enforce the statute going forward. Yes, Your Honor, but the effect would be the same. And so what Ambrose has tried to do in this case- The state could immediately take all the accounts that it's taken and turn them back to the banks and say, We're done. We're not going to do this anymore. It certainly could, Your Honor. But what he's trying to do is he's trying to keep everything in the future and he's trying to keep everything in perspective by never requesting his claim, by never even filing his claim. He's trying to keep everything in perspective. But that's just another way to try to use Ex parte Young to try to change something that is effectively monetary relief for a past taking and trying to turn it into a future relief just by asking for an injunction that will essentially require the state to do the same thing, namely going forward to pay Ambrose for the taking that even he- We wouldn't say that. We're just saying that you can't enforce the statute as written because it would be a taking. Yes, but that would be the same with any statute that would affect a taking. In other words, if what Ambrose is trying to do here by keeping everything perspective and by asking for declaratory relief, then that just- any plaintiff could use that strategy to get around any statute that he believed was a taking. But instead, the way that- what Mr. Ambrose should have done and what he could have done instead of coming to federal court was he could have filed a takings claim in state court because the Texas Supreme Court has held that if a plaintiff pleads a viable takings claim in state court, it's not barred by sovereign immunity and he can receive just compensation. So what do you do with the fact that the Supreme Court has overturned Williamson County? Because in the old days, I could understand, well, yeah, we want you to go to state court first, right? In fact, it was like a state law exhaustion requirement. So we make you go to state court first because the taking wasn't effectuated until the state court said no. But now in a post-Nick world, we don't have that requirement anymore. And the way I understand the Supreme Court to have said Nick is like, no, we think that the state courts and the federal courts are both open to takings claims. And I realize, I understand Nick doesn't involve a state, it involves a political subdivision. But it seems inconsistent with overruling Williamson County to say no, your only avenue for takings claims is now in the Texas state courts. Yes, Judge Oldham, we're not arguing an exhaustion requirement. We're not saying you have to go to state court and then you can go to federal court. What we're arguing instead is just along the lines of what this case said in James and Arnett. That the 11th Amendment bars taking claims in federal court. But that doesn't mean that you have no path to relief. So we're not saying you have to go to state court, then you can go to federal court. We're saying the proper way to do this is to bring your claim in state court where there is no sovereign immunity issue. And that would be true under the state's theory, no matter what kind of taking was effectuated and no matter what kind of relief. That's correct, your honor. So if the Texas Department of Public Safety shows up at my house tomorrow and they just take it. And they say, we're not even going to turn it into a law enforcement depot, we're going to turn it into a shopping mall, right? And we're taking it, we're not paying you for it, and we're not even purporting to use it for public compensation. We just would like to have your land. My only remedy in the state's view is in state court. Well, you could bring a takings claim, but you may also have a separate due process claim. So it's important to note that unlike, for example, the plaintiffs in James, Ambrose has not brought a due process challenge. So for example, he's not saying, as my friend on the other side mentioned, his argument is not three years is too short of time because, for example, I didn't receive notice or it's inherently unfair or if the government showed up at your property and just took it out from under you, there would be other problems. So you might have other types of remedies, but if you were to bring a takings claim, what you would be asking for is just compensation. A takings claim is not, the government cannot take your property, so enjoin it. A takings claim is, the government has taken your property, they've applied it to public use, and the remedy is just compensation, which is inherently retrospective. But if it was just bringing a takings claim and I asked for two things in the alternative, or I guess I don't even have to be in the alternative, but number one, I'd like to be compensated for my land and my home. And number two, I'd like you to give it back, right? So it's an injunction, order the Department of Public Safety, Steve McCraw, to give me my land back, and I'd also like to be paid. Maybe in the alternative, maybe not, depends on how you plead it, but just under the takings clause, that could only be done in state court. That's correct, but the second part may well be appropriate for federal court. If what you're asking for is an injunction to return your property because due process was violated when it was taken. But not in the takings clause, but the injunction, right, so the ex parte young injunction thing could only work as to due process. Yes, your honor. And what would be the constitutional justification for saying you can sue the state for money, or injunctions even, under the due process clause in federal court, but you can't do it under the takings clause? I can't see why constitutionally, why there would be a distinction between the forum for vindicating those two different kinds of claims. So I think the reason is because of the inherently retrospective and monetary nature of the takings claim, I think that would probably be the justification. And that's in line with all of the precedent saying that sovereign immunity bars takings claims. And that that's why, as opposed to, I'm asking for a prospective injunction because my due process. But under my hypothetical with Steve McCraw, who shows up, big armed guards, and everybody takes my land. That's retrospective, right? I mean, I'm saying that he comes up on January 1st, takes my land at gunpoint. I want to be compensated for that. And I would think you would have a 14th Amendment remedy vindicable under 1983 against him in his personal capacity for that, whatever you would call that. I want to call it a taking, but call it a due process violation. It could be a trespass or something like that as well. So it depends again on what the remedy is and what exactly the harm is that you're trying to remedy. If you're trying to get an injunction to get your property back, that's different from, I want just compensation because my property was applied to some public use. So that's Ex parte Young, very briefly on Penney's, because he addresses this in his briefing. He says, even if Ex parte Young doesn't apply, Texas has waived its sovereign immunity for the plan of the convention, but he provides no historical analysis to show that a citizen suing his own state in federal court for taking is on the same footing as the exercise of federal authority that was at issue in Penn East. And the Sixth Circuit expressly rejected this argument in Skatemore versus Whitmer. But again, all of this, both for Ex parte Young and Penn East, all of that is not to say that he had no avenue by which to seek just compensation. The Texas Supreme Court has expressly held that that's available in state court. I'd like to briefly turn, if I could, to talk about standing. And in James, this court explained that the standing analysis and the sovereign immunity analysis are very similar in this context. And in James, the court held that the plaintiff lacked standing to seek prospective relief, unless he alleged a future taking, which he didn't, and neither did Ambrose. Again, it all turns on the taking that is undisputably in the past. So that's as far as the court needs to go, is to hold that the district court lacked jurisdiction, either because sovereign immunity bars the claim or because Ambrose lacks standing. But if the court disagrees and if the court were to consider the merits, it should hold that there's no unconstitutional taking. The Texas statute has two purposes. It provides a way for Texans to reclaim property that they have forgotten about or lost track of. And it also provides a way for the state to invest unclaimed property for the benefit of Texans. And those two goals are consistent with what the Supreme Court said in Texaco, which is that the states have the power to provide that property will change hands after the passage of time. But that's not what, the state's not claiming a sheet here, I thought. It was three years, said well, instead of you're getting the interest, we'll get it back to you, but we get the interest. I mean, what's the justification for that? So in Texaco, the Supreme Court said unused or abandoned. So the Seventh Circuit in Sarajewski and its progeny say, Texaco only applies if the property has been completely abandoned in a common law sense, but Texaco is actually worded broader than that. And so to understand why that principle makes sense in this context, it's undisputed that Ambrose had no idea that this property existed until he allegedly saw it on the comptroller's website. So if this law didn't exist, Ambrose would have none of this money. But because the law exists, if he files the appropriate documentation, he'll receive back the full amount. That's consistent with the idea that we want property to be used. The alternative is that the property just remains with the holder. Well, I have money in bank accounts, and I forget sometimes that I don't use it. I don't need to use it. I don't write a check for three or four years. The state comes and takes it without my knowledge. I go to write a check, and I find out my account's gone. So the government's not saying after three or four years it's theirs, because it's a seven-year statute, as I understand Texas law. They just say, well, you didn't use it for three or four years, so we get to use it and get the interest. So it's important to remember that for this law to apply and for a holder to need to turn the property over to the comptroller, it's not only the passage of time, the property owner also has to be, the location of the owner has to be unknown, and the owner has to be unreachable. So it's not just you have money in an account and you don't happen to use it for a few years. It's also that the bank has no idea where you are. It doesn't have contact information for you. And so, absent a law like this, the money would just remain in that account. And presumably, if you're out of touch and the bank doesn't even know how to contact- I get married, I change my name, which happened. I move, I don't give the bank my new address. But I know I have an account there. I don't have any reason to think Chase is going to give my money to the state. You would because of the law, Your Honor. And again, the law is serving not only the interest of the state in that it invests it for all Texans, but it also helps protect the property owners themselves. And Ambrose is a good example of that. Again, because of the existence of the law, he'll have the opportunity to, it provides a sort of centralized place so that people who are in a situation where they have lost track of their money, or as Ambrose's case is, he doesn't even remember this property. And it gives him an opportunity to recover property that he otherwise wouldn't. It's also, this case is also different from Webb's because in Webb's, the money went into a separate account where it was held in trust for the owner. And so it made sense that the interest would follow the principle. But Texas's law works differently in that the unclaimed property gets commingled with the other state assets in the general revenue fund. And in fact, in Arnett, the district court expressly rejected the idea that all Texas's law is doing is holding property in trust for the owner. And this court, of course, affirmed the judgment and the reasoning of the district court. Do you think Webb's would have come out differently if Seminole County had said, we're gonna take the intervener fund or whatever that thing was called and just dump it into the general revenue in that space between the time of the payment and the time of the reclaiming, would the case come out differently? Quite possibly, because there would have likely been different issues raised. Probably what would have been issued in that instance would be something about whether the details of the law complied with due process. In other words, if this is supposed to be a temporary fund with a court registry for a particular purpose, and now the state or county is just taking the money, that would likely raise different arguments than we see here. I'm curious, are there other states that have statutes like TUPA? I mean, the general sheet rules are obviously, those are quite widespread, but I'm curious if there's other states that have this short of a sheet, three year limitations period, that whole thing. There are other similar laws. For example, the Sixth Circuit in O'Connor versus Eubanks held that sovereign immunity barred claims against a law that's similar to Texas's. Now, I'm not sure of all the details. For example, are they all three years? Maybe there's a range of different lengths of time, but there are certainly similar statutes to pursue these goals that the different states feel are important. Similar in the sense that the property remains not the state's, instead the account holders, but the interest goes to the state and not the account holder. That's right, and similar in that there is no change of title, but that there is change of possession, and that the assets become in the possession of the state. Suppose the legislature met, whatever, in January from now, and they decided to change the number from three years to 30 days. Does that create a takings question? It certainly creates a due process question because, again, you might have issues of notice. You might have issues of the ability even to have an opportunity to do something to keep the statute from being triggered. And it might well be an unreasonable understanding of what it means to be unused property. There's certainly going to be a spectrum, right? On some far end, we might have 100 years. On the other end, we might have a day. And at some point, it's going to become unreasonable for the state to think that after that much time has gone by. But three years, again, is not the length of the time that Ambrose has challenged here. He's not saying 20 years would be fine, seven years maybe, but three years is too short. But in the state's perspective, whatever the answer to these questions are, because I agree with you, it's a spectrum. It's not a takings question. It's a due process question or some other constitutional question or state law question or whatever. It has nothing to do with the takings clause. That's right, in that what's happening is the state is saying, this property is unused. We're going to make beneficial use of it, and we're going to provide a way for people to reclaim it. If they get too far to one end, and they get too ambitious in terms of changing the possession of this property, that's a different sort of question than takings and a different sort of remedy. There are no further questions we ask that the court hold that the district court lacked jurisdiction or in the alternative, that this was not an unconstitutional taking. Thank you. May it please the court. I'm rather astounded that my friend got up here and said that you can't bring a takings claim in federal court without going to state court first. After saying that there is no exhaustion requirement, he then just effectively stated in so many words that there is, because he told you, Judge Oldham, that you can never bring a takings claim in federal court. And Nick said very clearly, from the time of the taking, without payment of just compensation, there is a federal violation, a constitutional violation, which can be brought in federal court, period. Regarding the James case and the 11th Amendment, the court simply didn't consider in James the argument that we're making here today. If you look at the discussion of whether there was ongoing constitutional violation, the court discussed as the possible continuing violations, the state's alleged continuing provision of inadequate notice and its supposed continuing illegal taking of property into custody, which it held were not adequately pleaded by the plaintiffs in any case. It did not discuss the ongoing refusal to pay the time value of the plaintiff's property as a possible ongoing injury. And plus, and this is very important, unlike the plaintiffs in James, Mr. Ambrose has made a facial challenge to Tupa. That's critical, because the court noted that had the James plaintiffs made a facial challenge, it quote, would have permitted an inference of ongoing violations, because there is no evidence in the record that the state will halt enforcement of Tupa. That in turn would have supported the application of Ex parte Young. So here, Mr. Ambrose makes a facial challenge to Tupa, and we think under James, he's alleged an ongoing constitutional violation. By the way, we think if the court had considered this, it would have talked about Nick. Because in Nick and overruling Williamson, Justice Roberts said, hey look, there's a violation here, and the fact that later on the state may provide compensation cuts off the remedy, but it doesn't mean that there wasn't a violation. In other words, the implication of what Justice Roberts was saying is that there is an ongoing violation until the just compensation is paid. This court didn't consider that argument in James, and therefore we don't think it is dispositive of the 11th Amendment argument here, in terms of the injunction to require the payment of just compensation in the future. But what's absolutely clear, and undisputed until oral argument here, because they never said it in their brief, is that as Justice Richmond points out, the mere declaration of the unconstitutionality of the statute is exactly a prospective violation and a prospective relief. So it fits under Ex parte Young, and there's an ongoing violation here, so there's standing and there's rightness. Is it facial or is it case by case? Let's say you make a deposit with the phone company, $100 to open a new phone line in an office. You let her close the office, the phone company loses track of you and doesn't give you your deposit back. But there's nothing that requires the phone company to pay interest on that deposit. So the state comes and takes the $100 deposit under TUPA, which you would not have gotten interest on from the phone company. The state gets the interest on it when it invests it. Does TUPA apply there?  Absolutely, Your Honor. Whether or not the- Even though the state says as soon as you contact me, we'll give you your $100 deposit back. Absolutely, because it doesn't depend on whether the money was in an interest bearing account before you did it. You're still entitled to just compensation. I'm entitled to keep my money in a bunch of $100 bills in a sack in my pillow in case. And if the government takes it, just because I chose to keep it in cash at that time doesn't mean that money doesn't have a time value. And clearly, the measure is the market value of the property, the time it was taken, and the time value between the time it was taken and the time just compensation is paid. And Justice Easterbrook, I think it was, in the Colton case out of the Seventh Circuit, talks about exactly this in holding that under the Illinois Unclaimed Property Act, it was unconstitutional even if the money was not in a non-interest bearing account before it was taken. So I don't think the 11th Amendment, I think the district court was perfectly correct on the 11th Amendment and the prospective relief. And I would just note one last thing, which is on the, you were giving examples of where people were unknown. But what's important is under this statute, if the money in an account is less than $250, the bank does not have to send a letter before it transfers the money. And under the statute, if the amount is less than 100, the comptroller doesn't even have to give notice. So in a case like this of $25, no notice ever has to be given. Which, so I don't think that the supposed notice can justify the taking. Any further questions? Thank you, your honors.